Sharon **CERANKOWSKI**, Appellee

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 28, 2001.

Filed Sept. 11, 2001.

Sean M. Corr, Warminster, for appellant.

Joseph J. Aversa, Philadelphia, for appellee.

Before: DEL SOLE, P.J., EAKIN, and LALLY–GREEN, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, State Farm Mutual Automobile Insurance Company, appeals the order entered August 9, 2000, which granted the petition of Appellee, Sharon Cerankowski, to vacate award of arbitrators. We affirm.

¶ 2 The trial court found the following facts:

On September 11, 1991, Sharon Cerankowski, sustained serious injuries in an automobile accident. She was nineteen years old at the time. The individual operating the other vehicle in the accident was insured by Keystone Insurance Company. In November of 1994 Keystone offered $250,000, its policy limit, in order to settle Ms. Ceranskowski's claim against the driver of the other vehicle.

Ms. Cerankowski needed several surgeries after the accident and the $250,000 was not sufficient to cover damages. Ms. Cerankowski then filed a claim with her insurance company, State Farm, for underinsured motorist coverage. It is this claim that is the basis for the dispute.

Ms. Cerankowski also filed a product liability suit against a manufacturer of surgical equipment. After her surgeries she was left with an unusable hand which had fused into a clawlike position. Ms. Cerankowski settled her claim against the surgical equipment manufacturer for $45,000. State Farm has refused to pay on the underinsured motorist claim on the basis that Ms. Cerankowski violated the consent to settle clause of her insurance contract because she did not first receive permission from State Farm when she settled her products liability claim.

Counsel for Ms. Cerankowski claims that State Farm did give permission to proceed with the case against the manufacturer of surgical equipment. State Farm contends that it did not give permission for the settlement and that it has lost any subrogation claim to which it might have been entitled.

State Farm and Ms. Cerankowski proceeded to arbitration as required by the terms of the policy in order to resolve the matter. The board of arbiters ruled in favor of State Farm. Ms. Cerankowski filed a petition to vacate the award, which was granted.

Trial Court Opinion, at 1–2. State Farm filed this appeal.

¶ 3 State Farm presents the following issues for our review:

I. DID THE TRIAL COURT ERR IN VACATING THE ARBITRATORS AWARD ABSENT AN APPROPRIATE RECORD.

II. DID THE TRIAL COURT ERR IN REVIEWING THE ARBITRATION AWARD AS THERE WAS NO CLAIM THAT A SPECIFIC CLAUSE

OF THE POLICY VIOLATED PUBLIC POLICY, AND, GIVEN THE PARTIES' STIPULATION TO SUBMIT ALL COVERAGE ISSUES TO ARBITRATION.

III. DID THE TRIAL COURT ERR WHEN IT VACATED THE ARBITRATION AWARD ON THE BASIS THAT THE AWARD WAS CONTRARY TO PUBLIC POLICY.

IV. DID THE TRIAL COURT ERR IN VACATING THE ARBITRATION AWARD BASED UPON *NATIONWIDE MUTUAL INSURANCE COMPANY V. LEHMAN.*

State Farm's Brief at 4.

¶ 4 We first set out some background to the issues raised in this case. The relevant language in the insurance policy underlying the claim provides for arbitration and states that "[t]he Pennsylvania Uniform Arbitration Act, as amended from time to time, shall apply." *See,* "State Farm Policy," Petition to Vacate Award of Arbitrators, Exhibit 1. Thus, this case is governed by the Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301–7320.

¶ 5 A trial court may vacate an award under the Uniform Arbitration Act as provided under 42 Pa.C.S.A. § 7314 or, *inter alia,* when the relevant clause in an insurance policy is claimed to be void as against public policy. *Caron v. Reliance Insurance Company,* 703 A.2d 63, 66 (Pa.Super.1997).

¶ 6 The appropriate standards of review for the trial court and this court on appeal respecting challenges to arbitration decisions are as follows:

... Under this limited standard, the resolution of factual disputes is within the province of the arbitrators. In addition, "an allegation that a statutory arbitration award is contrary to law is not a sufficient basis for vacating the award."

However, a trial court can review a clause in an insurance policy where the claimant alleges that such a provision is contrary to public policy.

In general, we will reverse a trial court's decision regarding whether to vacate an arbitration award only for an abuse of discretion or error of law. However, where the trial court determines that a provision in an insurance policy violates the public policy of this Commonwealth, our standard of review is plenary as said issue presents a question of law for our determination.

*Caron,* 703 A.2d at 66 (Pa.Super.1997) (citations omitted) (emphasis added).

¶ 7 State Farm first argues that the trial court erred in vacating the arbitrator's award absent a sufficiently preserved record. State Farm appears to argue that the parties agreed to submit to the arbitrators the question of whether Appellee in fact violated the consent to settle clause and that Appellee did not raise a public policy argument respecting the consent to settle clause with the arbitrators. *See,* State Farm's Brief at 10–11. State Farm also suggests that Appellee had a duty to make a stenographic record of the proceedings before the arbitration panel in order to present a complete record to the trial court for review; without such record, the trial court could not vacate the award. *Id.*

¶ 8 The record reflects that State Farm correctly states that no stenographic record was made of the proceedings. However, Appellee did preserve the issue before the arbitration panel of whether "consent to settle" clauses are against public policy. Appellee argued to the arbitrators that public policy favors an extension of insurance coverage where the insurer cannot demonstrate prejudice and that restrictions on that coverage are void as against

public policy. *See,* "Plaintiff's Memorandum Concerning Consent to Settle Issue," attached to Appellee's Petition to Vacate Award of Arbitrators, Exhibit 4, at pages 6, 7, 8, 9, 11. State Farm's claim that this issue was not presented to the arbitration panel is not supported in the record.

¶ 9 State Farm also claims that the trial court could not vacate the arbitrator's award without a stenographic record of the arbitration proceedings because the court could not analyze what issues were preserved for appeal and the facts presented relating to those issues. *See,* State Farm's Brief at 12. This claim fails for two reasons.

¶ 10 First, a stenographic record of the arbitration proceedings is not required. *City of Scranton v. Shoemaker,* 59 Pa. Cmwlth. 141, 428 A.2d 1048, 1051 (1981) (Arbitration Act does not require that a record of arbitration proceedings be made and there is no requirement that all parties agree before a record is made). The relevant provision of the Arbitration Act, 42 Pa.C.S.A. § 7307(b), provides:

> **(b) Record.**—On request of a party who shall pay the fees therefor al [sic] testimony shall be taken stenographically and a transcript thereof made a part of the record.

42 Pa.C.S.A. § 7307(b). Any party may request that a record of the hearing be made. *Id.* Here, either party could or could not make a record of arbitration proceedings; neither one was required to do so.

¶ 11 Second, the lack of a stenographic record does not preclude the trial court's review in this case. A trial court can review a clause in an insurance policy where the claimant alleges that the clause is contrary to public policy, even though the court can not review the merits of the matter. *Azpell v. Old Republic Insurance*

*Company,* 526 Pa. 179, 584 A.2d 950 (1991); *Caron.* State Farm's claim fails.

¶ 12 State Farm's second argument is that since the parties stipulated that the arbitrators would decide all coverage issues, the award is conclusive and final. *See,* State Farm's Brief at 14. State Farm contends that Appellee's real contention is that "the arbitrators failed to take into account any prejudice to State Farm in the application of the consent clause." *Id.* at 15. In essence, State Farm believes the since the prejudice issue relates to coverage, the determination of the arbitrators is final.

¶ 13 There is nothing in the opinion to suggest that the arbitrators considered the public policy issue regarding the consent to settle clause. Thus, we are unable to conclude that the arbitrators ever reached the merits of the issue. *See, Azpell* and *Caron.*

¶ 14 State Farm's third claim is that the trial court erred in vacating the arbitration award on public policy grounds. State Farm claims that Appellee failed to contend, and the trial court did not find, that a particular "provision" of the State Farm policy was void as against public policy.

¶ 15 The record reflects that the consent to settle clause was at issue and preserved, and, therefore, that the public policy review by the trial court was appropriate. First, Appellee raised the issue in her "Memorandum Concerning Consent to Settle Issue." *See,* Exhibit 4. Next, Appellee argued in her Petition to Vacate:

> The arbitrators therefore ignored prevailing law and public policy, and permitted the operation of State Farm's "consent to settle" clause to defeat public policy.

Petition to Vacate Award of Arbitrators at 5. In addition, the trial court stated in its opinion:

"[Appellee's] contention is that the **consent to settle clause** in the insurance contract contradicts the prevailing public policy in this Commonwealth."

Trial Court Opinion at 3 (emphasis added). Thus, the preserved question before the trial court was whether the "consent to settle" clause was against public policy. State Farm's claim fails.

¶ 16 State Farm's fourth argument is that the trial court erred in relying upon *Nationwide Mutual Insurance Company v. Lehman,* 743 A.2d 933 (Pa.Super.2000) to vacate the arbitration award. State Farm argues that *Lehman* was simply an evidentiary ruling and not a public policy announcement. State Farm's Brief at 21–24.

¶ 17 In *Lehman,* our court held that settlement of a tort claim without the insurance company's consent did not prejudice the carrier and, thus, did not preclude underinsured motorist coverage. 743 A.2d at 941. The *Lehman* Court explained that, as was said in *Daley–Sand v. West Am. Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965 (1989), the insurer's use of the "consent to settle" clause frustrates public policy by depriving the insured of benefits for which she had paid. *Id.,* 564 A.2d at 971. The *Lehman* Court held that, due to public policy concerns, an insurer must prove that a settlement prejudiced its interests before it can deny underinsured motorist coverage pursuant to a consent to settle clause. *Lehman,* 743 A.2d at 941. Thus, State Farm's argument that *Lehman* is merely an evidentiary ruling and not one based on public policy issues lacks merit.

¶ 18 State Farm also argues that *Lehman* does not apply to the facts of Appellee's case. State Farm contends that *Lehman* is limited to cases where there was a settlement for the limits of the available insurance policy. State Farm cites the following language to support its claim:

... We hold that in order for an insurer to deny UIM coverage to an insured, where the insured settles with a tortfeasor for the limits of available liability insurance, and in contravention of the insurance policy's consent to settle clause, the insurer must show that its interests were prejudiced.

*Lehman,* 743 A.2d at 940.

¶ 19 We decline to agree that *Lehman* applies only to those cases in which the insured settles with a tortfeasor for the limits of available liability insurance. The *Lehman* court also stated, when discussing the relationship between "consent to settle" clauses, subrogation rights of the insurer and equitable rights of the insured:

... [W]e conclude that the purpose of a consent-to-settle clause in an insurance policy is to protect against an insured prejudicing the insurer's interests. **Where the insured settles with a tortfeasor without the insurer's consent and does not prejudice the insurer's interests, the purpose of the consent-to-settle clause is lacking.** Although an insured's settlement with a tortfeasor necessarily prejudices the insurer's technical subrogation rights, the insurer's actual interests are not prejudiced by a settlement without its consent where the circumstances at issue render subrogation impracticable.

Our conclusion derives from the proposition that "the right of subrogation may be contractually declared or founded in equity, *but even if contractually declared, it is to be regarded as based upon and governed by equitable principles.*" *Daley–Sand,* 564 A.2d at 970 (quoting *Allstate Ins. Co. v. Clarke,* 364 Pa.Super. 196, 527 A.2d 1021, 1023 (1987)). Furthermore, "subrogation is not an inflexible legal concept but, as an exercise of equitable powers, it is to be

carried out with an ... 'exercise of proper equitable discretion, with a due regard for the legal and equitable rights of others.'" *Daley–Sand,* 564 A.2d at 970. Nationwide seeks to place its subrogation rights ahead of its insured's right to UIM coverage. However, Nationwide collected premiums from the Lehmans for the insurance policy and they legitimately expected UIM coverage. The Lehmans settled with Warner for the entire amount available under Warner's insurance policy limit and this amount was inadequate to compensate the Lehmans for their losses and damages. Therefore, the Lehmans were entitled to claim UIM benefits. *See* 75 Pa.C.S. §§ 1702, 1731(a), (b). Thus, under the principle of law that we here establish, the trial court did not commit an error of law in placing upon Nationwide the burden of coming forward and proving that the settlement prejudiced its interests in order to deny UIM coverage.

*Lehman,* 743 A.2d at 941 (italic emphasis original) (bold emphasis added).

 ¶ 20 We follow the command of *Lehman* that "where the insured settles with a tortfeasor without the insurer's consent and does not prejudice the insurer's interests, the purpose of the consent-to-settle clause is lacking." *Id.* This language does not depend on a settlement for policy limits. Rather, it directs that an insurer must demonstrate prejudice before it can invoke a "consent to settle" clause to prevent its payment of underinsured motorist coverage to an insured who has paid for that insurance. Thus, State Farm's final argument fails.

¶ 21 Order affirmed.