**NATIONWIDE INSURANCE COMPANY, Appellee,**

v.

**Paul P. SCHNEIDER, Appellant.**

Superior Court of Pennsylvania.

Argued April 27, 2006.

Filed Aug. 17, 2006.

---

S. Stanton Miller, Jr., Media, for appellant.

James C. Haggerty, Philadelphia, for appellee.

Scott B. Cooper, Harrisburg, for PA Trial Lawyers, Amicus Curiae.

BEFORE: DEL SOLE, P.J.E., HUDOCK, JOYCE, STEVENS, LALLY–GREEN, TODD, GANTMAN, McCAFFERY, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Paul P. Schneider, challenges the summary judgment entered by the trial court in favor of Appellee, Nationwide Insurance Company, as well as the denial of Schneider's cross-motion for summary judgment. The disposition of the trial court permits Nationwide to deny underinsured motorist benefits (UIM) to Schneider, and relies upon the insurance

policy's provisions which (1) necessitate Nationwide's consent before the insured settles any claims with third-party tortfeasors, and (2) requires exhaustion by payment of the limits of primary or first priority UIM coverage. After a careful and thorough review, we reverse.

¶ 2 The facts of the case are straightforward. On October 4, 1996, Schneider, an Upper Darby Township police officer, was on duty driving a police cruiser. While stopped at a light on MacDade Boulevard in Ridley Township, Schneider's vehicle was struck from behind by a vehicle driven by Ayanna Lee Cooper, causing Schneider to suffer severe injuries. On May 21, 1999, Schneider settled his claim against Cooper for $15,000.00, the limit of Cooper's policy with her insurance carrier, American Independent Insurance Company.

¶ 3 Schneider then pursued a claim for UIM benefits from Granite State Insurance Company, which provided coverage for the police vehicle Schneider was driving at the time of the accident. The Granite State policy limit for UIM benefits was one million dollars. On December 21, 2001, Schneider settled his claim with Granite State by way of a structured settlement with a present value of $750,000.00.

¶ 4 Following the resolution of his claims against the tortfeasor and Granite State, Schneider notified Nationwide that he was seeking UIM benefits under his personal automobile policy issued by Nationwide. His policy with Nationwide contained a stacked coverage limit of $200,000.00. In his claim, Schneider extended a "credit" to Nationwide consisting of the settlement with the tortfeasor[1] and the limits of the UIM coverage under Granite State's policy ($1,000,000.00), for a total "credit" of

$1,015,000.00. Nationwide issued a denial of Schneider's claim, and, as a result, Schneider made a demand for arbitration, as specified in his policy with Nationwide. Nationwide responded by filing a declaratory judgment action in the trial court.

¶ 5 In its declaratory judgment action, Nationwide argued that Schneider was precluded from receiving UIM benefits because he had violated the terms of Nationwide's policy by (1) failing to obtain Nationwide's consent prior to settling with and releasing the tortfeasor in the third party action, and (2) failing to exhaust the full limits of Granite State's UIM coverage. The trial court resolved the matter by way of cross-motions for summary judgment. As stated above, the trial court issued an order granting Nationwide's motion and denying Schneider's cross-motion.

¶ 6 On appeal, Schneider raises three issues for our review.

A. Did the trial court commit an error of law, by interpreting Section 1733 of the Motor Vehicle Financial Responsibility Law to mandate only the priority of payment of underinsured motorist benefits under multiple policies of auto insurance?

. . .

B. Did the trial court commit an error of law, by concluding that a second priority underinsurer could deny liability for payment of underinsured motorist benefits, where the insured had not obtained the insurer's consent to settle with the tortfeasor, but had obtained consent to settle from the first priority underinsurer?

1. As aforesaid, Schneider settled with the third-party tortfeasor for the full limits of American's policy, i.e., $15,000.00.

. . .

C. Did the trial court commit an error of law, in concluding that an insured's claim for second priority underinsured motorist benefits was barred, where the insured did not exhaust by payment the limits of first priority underinsured motorist benefits, but extended a "credit" for the limits of first priority coverage?

Appellant's Brief at 3.

¶ 7 The scope of review of a trial court's order granting a motion for summary judgment is plenary, meaning that we are not bound by the trial court's conclusions of law, but may reach our own conclusions. *Grandelli v. Methodist Hospital,* 777 A.2d 1138, 1144 (Pa.Super.2001). Summary judgment is properly granted as a matter of law:

> [I]f, after the completion of discovery relevant to the motion . . ., an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P., Rule 1035.2, 42 Pa. Cons. Stat. Ann. The adverse party who bears the burden of proof at trial must come forward with evidence essential to preserve his cause of action. *Id.,* Note. If such a party fails to produce such essential evidence, the moving party is entitled to judgment as a matter of law. *Grandelli,* 777 A.2d at 1143–44 (citation omitted).

¶ 8 However, we must review the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Id.* We may only disturb the trial court's grant or denial of summary judgment upon an error of law or an abuse of discretion. *Id.*

An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

*Harman v. Borah,* 562 Pa. 455, 469, 756 A.2d 1116, 1123 (2000) (citations omitted).

¶ 9 With this standard in mind, we review the issues raised by Schneider on appeal. Schneider first argues that the trial court erred in its construction of the Motor Vehicle Financial Responsibility Law ("MVFRL").[2] Specifically, Schneider claims that the trial court erred in its application of the section of the MVFRL pertaining to the priority of recovery of UIM benefits. We agree.

■ ¶ 10 Under the MVFRL, the policy covering the vehicle occupied by the claimant must provide initial UIM coverage. 75 Pa. Cons. Stat. Ann. § 1733(a)(1). Next, benefits are provided by any "policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured." 75 Pa. Cons. Stat. Ann. § 1733(a)(2).

¶ 11 In the instant case, Schneider was driving his employer's vehicle at the time of the accident. This vehicle was covered under a policy issued by Granite State. Schneider also was an "insured" for UIM coverage under his personal automobile insurance policy with Nationwide. Therefore, Granite State Insurance Company was the primary UIM insurer and Nationwide, the secondary or excess UIM insurer. The trial court, in its discussion with respect to the priority of claims, incorrectly stated that Section 1733 of the MVFRL required the "exhaustion of one category

---

**2.** 75 Pa. Cons. Stat. Ann. §§ 1701–1799.7.

of benefits before the next may be pursued." Trial Court Opinion, 10/07/2004, at 8. However, Section 1733 makes no mention of exhaustion of limits:

### § 1733. Priority of recovery

(a) **General rule.**—Where multiple policies apply, payment shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

75 PA. CONS. STAT. ANN. § 1733(a).

¶ 12 Compounding this error, the trial court opined further that Schneider failed to follow the requisite statutory priority in seeking UIM benefits. The trial court's conclusion is belied by the record which clearly indicates that Schneider first sought UIM coverage from Granite State, the insurer of the vehicle he occupied at the time of the accident. Only after recovering UIM benefits from Granite State did Schneider seek secondary coverage through Nationwide, his personal automobile insurer. Therefore, Schneider prioritized his claims for UIM benefits in the order set forth by Section 1733. Accordingly, we conclude that, to the extent the trial court relied upon Section 1733 in its disposition of the cross motions for summary judgment, such reliance was in error.

¶ 13 Next, Schneider takes issue with the trial court's determination that he was required to obtain Nationwide's consent to the settlement agreement he reached with Granite State. Resolving this issue requires the interpretation of Schneider's insurance policy with Nationwide. Our Supreme Court set forth the requirements for interpreting an insurance policy in *Riccio v. American Republic Insurance Company*, 550 Pa. 254, 263–64, 705 A.2d 422, 426 (1997).

In interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. However, if the policy provision is ambiguous, the policy provision must be construed in favor of the insured and against the insurer as the drafter of the instrument. Also, the words of the insurance policy must be construed in their natural, plain and ordinary sense. Moreover, an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument.

*Id.* (citations omitted). When policy language is ambiguous, the ambiguous provision must be construed in favor of the insured and against the insurer. *Burton v. Republic Insurance Company*, 845 A.2d 889, 893 (Pa.Super.2004).

¶ 14 In the present case, we must interpret the consent-to-settle clause in Nationwide's policy. This clause provides that "[t]he insured must obtain [Nationwide's] written consent to: a) settle any legal action brought against any liable party; or b) release any party." The trial court found that this provision required Schneider to obtain Nationwide's consent prior to settling with the primary UIM insurer. Although there is no serious contention that this was an improper construction of the insurance policy, the flaw in the trial court's reasoning is in its failure to recognize established caselaw which requires an additional element, i.e., a showing of prejudice.

¶ 15 Even if the primary UIM insurer is a "liable party" under the UIM provisions of the policy, when an insured

settles in contravention of a policy's consent-to-settle clause, an insurer must show that its interests are prejudiced. *Nationwide Mutual Insurance Company v. Lehman*, 743 A.2d 933, 940 (Pa.Super.1999) *("Lehman")*. It is the burden of the insurance company, and not the insured, to demonstrate prejudice. *Id., citing Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 77, 371 A.2d 193, 198 (1977).

¶ 16 The trial court attempted to distinguish *Lehman*, and placed the burden of proof on the insured, by noting that the insured in *Lehman* presented evidence that the insurer was not prejudiced by the failure to gain consent. However, this is not a valid distinguishing feature given the explicit holding of *Lehman:*

> Thus, under the principle of law that we here establish, the trial court did not commit an error of law in placing upon Nationwide the burden of coming forward and proving that the settlement prejudiced its interests in order to deny UIM coverage.

*Lehman*, 743 A.2d at 941. Use of the consent-to-settle clause to deny benefits, absent any showing of actual prejudice by the insurer, "frustrate[s] public policy by depriving the insured of benefits for which she had paid." *Id.*, at 938. Accordingly, the *Lehman* Court explicitly placed the burden upon the insurer to establish prejudice.

¶ 17 The Supreme Court of Pennsylvania recently addressed the continuing viability of the *Brakeman/Lehman* line of cases. In *State Farm Mutual Automobile Insurance Company v. Foster*, 585 Pa. 529, 889 A.2d 78 (2005),[3] the Supreme Court addressed the failure of an insured to comply with the "police reporting requirement" of the MVFRL.[4] The insured in *Foster* argued on appeal that *Brakeman* required an insurer to establish prejudice before failure to comply with the "police reporting requirement" could be used to justify the loss of coverage under an insurance policy.

¶ 18 Despite a clear opportunity to revisit *Brakeman*, the Supreme Court instead distinguished it on legal grounds. The Court noted that the purpose of the notification requirement in *Brakeman* was to protect the private interests of the insurer. *Foster*, 585 Pa. at 536, 889 A.2d at 81. In contrast, the Court noted that the "police reporting requirement" of the MVFRL served a public purpose in minimizing fraud, thereby enabling the provision of affordable automobile insurance. *Id.* As a result, the Court held that *"Brakeman's* prejudice requirement is inapplicable to the [MVFRL's statutory police reporting requirement.]" *Id.*, 585 Pa. at 536, 889 A.2d at 82.

¶ 19 Therefore, although there was an opportunity to re-examine the prejudice requirement of *Brakeman*, and therefore

---

3. It is important to note that no rationale set forth by the Supreme Court in *Foster* received the votes of a majority of the Justices. Justice Nigro did not participate in the decision of the case, while the lead opinion only gathered the votes of three justices. Two justices dissented, and Justice Saylor filed a separate concurring opinion, noting that he differed from the lead opinion's discussion on two important points.

4. The definition of an "uninsured motor vehicle" in the MVFRL provides:

> An unidentified motor vehicle that causes an accident resulting in injury *provided the accident is reported to the police or proper governmental authority* and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.
>
> 75 Pa. Cons. Stat.Ann. § 1702 (emphasis added).

by extension *Lehman*, the Supreme Court not only declined to do so, but instead reaffirmed their precedential value. As such, both *Brakeman* and *Lehman* are controlling law with respect to policy clauses requiring the consent of the insurer. Furthermore, Nationwide has provided no evidence or argument that the consent-to-settle clause implicates a public policy under the facts of this case sufficient to bring it under the holding of *Foster*. Thus, the trial court erred by failing to place the burden of establishing prejudice upon Nationwide.

¶ 20 In similar fashion, Nationwide's contention that Schneider is not entitled to coverage because he failed to provide Nationwide with timely notice of the secondary UIM claim also fails. The policy language addressing the notice requirement provides, in relevant part, that "[t]he injured party shall provide notice of an ... underinsured motorists claim within two years after the date of the accident. If the injured party fails to provide such notice, *and* this failure precludes our ability to subrogate against liable parties, coverage may be denied...." *See* Nationwide Policy, Amendatory Endorsement 2391 (emphasis added). The notice provision of the policy therefore explicitly includes a requirement that Nationwide must be precluded from subrogating against liable parties before Nationwide may deny coverage based upon lack of notice. Nationwide admits that there is no right of subrogation associated with the settlement of the primary UIM claim: "The signing of a release in favor of the Granite State Insurance Company by the defendant, Schneider, extinguishes no subrogation rights of the plaintiff, Nationwide, against that insurer. In fact, no such rights exist." Ap-

pellee's Brief, filed 12/22/2004, at 20.[5] Furthermore, once again, Nationwide has failed to present any evidence that it has been prejudiced in any way. Accordingly, under the explicit language of the policy, Schneider's failure to give timely notice cannot be sustained as a genuine ground for the denial of his claim under the policy.

¶ 21 Schneider's third issue on appeal is that the trial court erred in concluding that the primary UIM limits were not exhausted, even though Schneider extended a credit to Nationwide for the full primary UIM limit. In other words, Schneider agrees that Nationwide does not have to pay any UIM benefits until Schneider demonstrates that he has suffered more than $1,015,000.00 in damages.

¶ 22 The pertinent clause in the Nationwide policy provides that "[n]o payment will be made until the limits of all other auto liability insurance and bonds that apply have been exhausted by payments." *See* Nationwide Policy, Amendatory Endorsement 2358. An analogous issue was before this Court in *Boyle v. Erie Insurance Company*, 441 Pa.Super. 103, 656 A.2d 941 (1995), *appeal denied*, 542 Pa. 655, 668 A.2d 1120 (1995).

¶ 23 In *Boyle*, the injured parties brought a claim for underinsured motorist benefits against their personal insurance carrier after they had settled with the tortfeasors responsible for the accident. The plaintiffs' underinsured motorist policy contained an exhaustion requirement which barred UIM benefits unless the plaintiffs recovered the "limits" of any bodily injury insurance policy. 656 A.2d at 942. The *Boyle* court recognized that the "exhaustion clause must be interpreted to provide protection to an insurance compa-

---

5. We note that *amicus curiae* Pennsylvania Defense Institute (PDI) similarly concedes this point: "Here, subrogation is irrelevant. [Nationwide] has no subrogation rights against the primary UIM insurer." PDI's Brief, at 14.

ny against a demand by its insured to fill the 'gap' after a weak claim has been settled for an unreasonably small amount." 656 A.2d at 943. However, the same clause must also be interpreted to protect an injured insured against delay in recovery when prompt payment is needed. *Id.* To address these conflicting interests, the *Boyle* court stated that the exhaustion clause, in order to avoid public policy concerns, should be construed as a threshold requirement and not a bar to recovery of UIM coverage. In accord with our decision herein, the court in *Boyle* held that the UIM carrier of the insured party was entitled to a credit against its UIM coverage equal to the maximum liability coverage available under the insurance policy of the tortfeasor.

> [T]he insureds will not be allowed underinsured motorist benefits unless their damages exceed the maximum liability coverage provided by the liability carriers of other drivers involved in the accident; and their insurer will, in any event, be allowed to credit the full amounts of the tortfeasors' liability coverages against the insureds' damages.

656 A.2d at 943–944.

¶ 24 Unlike the trial court, we find no distinguishing features in *Boyle* merely because it addressed an exhaustion clause directed at third party liability coverages instead of primary UIM benefits. Therefore, Schneider's extension of credit of the limits of the Granite State policy satisfied the threshold condition of *Boyle*. In finding in favor of Nationwide and against Schneider in this regard, the trial court relied on *State Farm v. Ridenour*, 435 Pa.Super. 463, 646 A.2d 1188 (1994), *appeal denied*, 540 Pa. 585, 655 A.2d 516 (1994) *("Ridenour")*. By our reading, however, *Ridenour* explicitly contradicts the trial court's conclusion.

¶ 25 In *Ridenour*, which predated *Lehman*, the policyholder (Ridenour) failed to obtain the primary UIM insurer's (Goodville) consent to settle her claim with the tortfeasor. 646 A.2d at 1189. Clearly, Ridenour's failure to obtain Goodville's written consent under the circumstances of that case, prior to settling with and releasing the tortfeasor, was a violation of the terms and conditions of Goodville's policy. *Id.* at 1191.

¶ 26 State Farm, Ridenour's personal automobile liability insurer, then denied UIM coverage based on Section 1733, discussed above. In a decision written by our distinguished deceased colleague, the Honorable Donald Wieand, and joined by President Judge Kate Ford Elliott and President Judge Emeritus Joseph Del Sole, we held that Ridenour's failure to gain Goodville's consent to settle with the tortfeasor precluded Ridenour from coverage under the primary Goodville policy, and consequently that it did "not entitle her to substitute State Farm as the carrier primarily liable for such benefits." *Id.* However, we also held that Ridenour's default under the Goodville policy did "not release State Farm from its secondary liability under the terms of the statute." *Id.*

¶ 27 The limits of liability for UIM coverage under the Goodville policy were $100,000 per person/$300,000 per occurrence. *Id.* We noted that "[i]t follows that if the Ridenour claim for underinsured motorist benefits is less than $100,000, then there can be no recovery from State Farm." *Id.* In contrast, if Ridenour could prove a valid claim for UIM benefits in excess of $100,000.00, there was no reason for disallowing a recovery of such excess from State Farm. *Id.*

¶ 28 As noted previously, this Court subsequently, in *Boyle*, provided the positive rationale underlying this rule. In *Boyle*,

we noted that strictly enforcing an exhaustion clause:

> [W]ould delay recovery when prompt payment was needed, would lessen the insured's recovery by requiring him or her to pay additional costs, and would unnecessarily burden the judicial system. Where the best settlement available is less than the [tortfeasor's] liability limits, the insured should not be forced to forego settlement and go to trial in order to determine the issue of damages.

*Boyle v. Erie Insurance Company*, 441 Pa.Super. 103, 656 A.2d 941, 943 (1995), *appeal denied*, 542 Pa. 655, 668 A.2d 1120 (1995).

¶ 29 Moreover, to interpret the exhaustion clause as a tool to prohibit UIM coverage, instead of a threshold requirement, would be contrary to the legislative intent behind Section 1731 of the MVFRL. See 75 Pa. Cons. Stat.Ann. § 1731. Under Section 1731, all insurers offering liability insurance in Pennsylvania must offer underinsured motorist coverage as optional insurance which provides "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa. Cons. Stat.Ann. § 1731(c). Section 1702 of the MVFRL defines an underinsured motor vehicle as any "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." In light of the mandatory language of the MVFRL, we agree with the assessment of the Third Circuit Court of Appeals that our legislature intended that "insurers must provide protection for all persons injured by a motor vehicle having less liability insurance than the loss and damages sustained." *North River Ins. Co. v. Tabor*, 934 F.2d 461, 464

(3rd Cir.1991). We find a clear legislative choice in favor of secondary UIM benefits, pursuant to UIM coverage paid for by the insured, to a claimant whose damages exceed the limits of all available liability and primary UIM policies.

¶ 30 Accordingly, in the present case, Schneider is precluded from substituting Nationwide as the primary UIM insurer. Nationwide, as the secondary UIM provider, is entitled to a credit against its UIM limits equal to the maximum UIM coverage available from the primary carrier. However, pursuant to the terms of the Nationwide policy, Schneider's claim against Nationwide must be submitted to arbitration. At arbitration, Nationwide's liability is limited to that amount of UIM benefits, if any, which exceed $1,015,000.00, up to its policy limit.

¶ 31 Lastly, Nationwide, as appellee, raises the issue that the settlement and release of the primary UIM claim bars recovery of excess UIM coverage. Appellee's Brief at 33–34. Settlement and release agreements are construed in the same manner as contracts generally. *Sparler v. Fireman's Insurance Company of Newark, New Jersey*, 360 Pa.Super. 597, 521 A.2d 433, 434 (1987), *appeal denied*, 518 Pa. 613, 540 A.2d 535 (1988). "[T]he intention of the parties to a written release is paramount." *Id.*, at 435. Therefore, a settlement and release normally covers matters that can be fairly said to have been contemplated by the parties when the agreement was signed. *Id.*, at 434–435. A settlement and release agreement should be interpreted in a manner which "ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Id.*, at 435 (citation omitted).

¶ 32 The settlement agreement between Schneider and Granite State contained the following language:

[Schneider] hereby acknowledges and agrees that the Release set forth in paragraph 1 hereof is a general release and he further expressly waives and assumes the risk of any and all claims for damages which exist as of this date but of which the Claimant does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the Claimant's decision to enter into this Settlement Agreement.

Obviously, there is no language which explicitly releases Nationwide from its contractual duties to Schneider. Furthermore, we find no evidence of record that could fairly support an inference that by this language Schneider intended to release Nationwide. Accordingly, this release cannot be construed to act as a release of Schneider's claims against Nationwide.

¶ 33 Order reversed. Remanded for arbitration. Jurisdiction relinquished.

¶ 34 Judge GANTMAN concurs in result.