AMERICAN STATES INSURANCE
COMPANY, Appellee

v.

ESTATE OF Michael BRAHEEM,
Melva Donovall, Executrix,
Appellants.

Superior Court of Pennsylvania.

Argued Sept. 6, 2006.

Filed Jan. 23, 2007.

Reargument Denied April 4, 2007.

Clark A. Mitchell, Washington, for appellants.

Daniel P. McDyer, Pittsburgh, for appellee.

BEFORE: KLEIN, PANELLA and JOHNSON, JJ.

OPINION BY KLEIN, J.:

¶ 1 The Estate of Michael Braheem (Estate) appeals from the order granting summary judgment in favor of American States Insurance Company (American States), which determined that American States did not owe $900,000 in underinsured motorist benefits to the Estate.

The parties filed cross-motions for summary judgment, and the trial court ruled for American States in each instance after concluding that American States did not need to show prejudice in order to invoke the "notice" clause in its policy. We reverse and remand for a hearing to determine whether the delay in advising American States resulted in prejudice.

¶ 2 The trial court ruled that since the Estate admittedly did not give American States timely notice of its claim, the claim must be denied regardless of prejudice to American States. That was error, as later confirmed by our Court's recent decision *Nationwide Insurance Company v. Schneider*, 906 A.2d 586 (Pa.Super.2006) *(en banc)* where we held that the carrier must show prejudice to enforce a denial of coverage based on late notice.[1] Therefore, we must reverse and remand for further proceedings.

¶ 3 The facts of this case are as follows. Michael Braheem was killed as a passenger in a one-car accident in which the driver, William Allen, was also killed. Both the Allen and Braheem tested well over the legal limit for blood alcohol content (BAC) for purposes of the DUI statute. The Estate collected full policy liability limits from the driver of the car as well as the full limits of Braheem's own underinsured motorist coverage.

¶ 4 More than two years after the accident, a claim was then made for $900,000 in stacked underinsured motorist coverage from a policy issued to Braheem's stepfather, with whom Braheem lived. While it is undisputed that Braheem was covered under that policy, it appears that Bra-

---

1. We are not faulting the trial court in any way for "ignoring" *Schneider*. *Schneider* was not decided until after the trial court ruled in this matter. While prescience may be an admirable (though imaginary) quality, no trial court can follow an appellate decision that has not been announced. In other words, the trial court could not have disregarded that which did not exist.

heem's original counsel did not believe the policy was applicable because Braheem was a stepchild of the policy holder rather than a blood relative.

¶ 5 American States denied coverage for two reasons: 1) the Estate had extinguished American States' subrogation rights against whatever bar that had served the driver, and 2) the Estate had settled with the tortfeasor and Braheem's own UIM carrier without notifying American States.

■ ¶ 6 We disagree that the settlement with the tortfeasor and Braheem's own UIM carrier without notifying American States would prejudice American States. Assuming any applicable credit for the policy limits would be given, American States could suffer no prejudice by Braheem settling claims for the full value of the policies. However, we believe there is an unresolved issue of fact as to whether American States can show prejudice regarding the destruction of its possible subrogation rights against the bars. Therefore, we believe summary judgment was inappropriate.

■ ¶ 7 Several facts need to be resolved before the ultimate determination of coverage and recovery are addressed. Some of the issues are clear and some are complicated. We see these issues as follows:

1. For a carrier to deny a claim based upon late notice, the carrier must demonstrate prejudice by a preponderance of the evidence.

2. Although a party need not exhaust coverage against a non-driver (such as a dram shop action or a claim against PennDOT for a badly construct-

ed road, see Kester v. Erie Insurance Exchange, [399 Pa.Super. 206] 582 A.2d 17 (Pa.Super.1990)) before claiming uninsured motorist benefits, the party may not defeat the carrier's right to subrogation.

3. The affidavit supplied by American States is sufficient to withstand the summary judgment sought by the Estate, despite the cross-affidavits filed by the Estate. It is a matter of credibility whether American States can show by a preponderance of the evidence that the Estate destroyed a viable dram shop action.

4. If the facts are determined to be sufficient to establish liability in a dram shop action and therefore prejudice, it is then up to the arbitrators in an underinsured motorist arbitration to determine the value of the dram shop action and how that would affect the total recovery.

¶ 8 A full discussion follows.

**American States must show prejudice to defeat the claim.**

¶ 9 American States claims that it can deny coverage because the Estate settled claims against the tortfeasor and with Braheem's UIM carrier without notifying it. Additionally, by delaying the claim past the statute of limitations, the Estate has made it impossible for American States to pursue subrogation against the bar or bars that served the driver.

¶ 10 The denial of the claims against the tortfeasor and Braheem's own policy are based on the contractual requirement that the insurer be notified of other pending actions. Generally, this concept is known as "consent to settle"[2] and the rationale

2. Regarding the tortfeasor and Braheem's own policy, notification and consent to settle run hand-in-hand. Obviously, American States could not give consent to settle either claim without notice. Prejudice, in this regard, is determined by the carrier receiving full value for other claims. In this matter, there is no question of prejudice because the

behind enforcing a consent to settle clause is to ensure the carrier receives the full value of the liability and/or primary UIM policies and to protect the insurer's subrogation rights against the tortfeasor. *See generally State Farm Insurance Companies v. Ridenour*, 435 Pa.Super. 463, 646 A.2d 1188 (1994).

■ ¶ 11 The denial of the claim based on the destruction of the potential dram shop action is based purely on the lack of notice and is directly connected to American States' rights of subrogation. However, the general right to pursue subrogation is limited to the practical and equitable necessity of the insurer showing that a failure to protect subrogation rights in fact harmed the insurer. For example, if the tortfeasor has no assets then the benefit an insurer might obtain from subrogating a claim is largely illusory and the practical effect of subrogation is non-existent. *See supra*, note 2. This concept is embodied in *Cerankowski v. State Farm Automobile Insurance Company*, 783 A.2d 343 (Pa.Super.2001), which held that an insurer must demonstrate prejudice before it can invoke a consent to settle clause and deny coverage. Because consent to settle clauses and notice clauses are so closely related and protect, in large part, the same rights of the insurer, there is no reason they should be treated differently in terms of requiring the insurer to show prejudice. Further, it is the insurer that must demonstrate prejudice; it is not the claimant's responsibility to show a lack of prejudice. *Schneider, supra.*

**It is prejudicial if late notice defeats a viable subrogation right against third parties.**

■ ¶ 12 It is clear that the Estate settled with the tortfeasor and Braheem's

own UIM carrier without notifying American States. Because the trial court ruled that it was not necessary for American States to demonstrate prejudice to invoke the notice clause and deny coverage, it never made findings of fact or conclusions of law on the issue of prejudice.

¶ 13 The Estate argues that the Underinsured Motorist Statute and policies under it provide that UIM coverage is due after recovery from all other drivers involved in an accident but not third parties. *See Kester, supra.* This reliance on *Kester* is misplaced. *Kester* holds that UIM coverage may not be denied for failure to exhaust, or failure to even attempt to collect, from a third party tortfeasor. *Kester* does not require exhaustion of such policies because recovery from that source is still available to the insurer through subrogation. Because an insurer is not entitled to a set-off from the third party tortfeasor, it is especially important to protect the insurer's subrogation rights. Thus, if a claimant defeats a viable subrogation right, this will provide the prejudice needed for the insurer to deny coverage.

**American States produced sufficient evidence of a viable dram shop action to survive summary judgment.**

¶ 14 While it is true that there is no evidence of prejudice to support American States' position that it was prejudiced by the settlements with the driver and Braheem's UIM carrier, there is sufficient evidence of prejudice regarding the potential dram shop action. Thus, Braheem is not entitled to summary judgment on that issue.

■ ¶ 15 Evidence of record indicates that William Allen, the driver of the vehicle, died without assets. Further, because

full policy limits were tendered. As to subrogation against the tortfeasor, the driver died leaving no estate so there was nothing to subrogate against.

Allen is deceased, it is impossible to claim that future earnings could satisfy a judgment. Thus, American States cannot demonstrate any prejudice resulting from Braheem settling with Allen for the full limits of Allen's liability policy.

■ ¶ 16 Similarly, there is no prejudice to American States regarding the settlement with Braheem's UIM carrier. Prejudice in this situation is most often demonstrated when the claimant accepts less than the policy limits and then seeks additional coverage from a secondary UIM carrier. Here, the Estate settled the UIM claim for the policy limits. Thus, American States has demonstrated no prejudice. This issue was recently decided in *Schneider, supra.*

¶ 17 However, there is a real question as to whether American States was prejudiced by the destruction of its subrogation rights regarding the dram shop claim. The Estate has presented sufficient evidence, in the form of affidavits, indicating the taverns in question did not have dram shop insurance, did not own the property, and that there was no viable dram shop action, to defeat American States' motion for summary judgment. It is a closer question whether American States presented enough evidence to defeat the Estate's motion for summary judgment.

¶ 18 American States presented an affidavit from an expert, a lawyer experienced in such actions, who opined there was sufficient circumstantial evidence to maintain that the bartenders should have known that Allen was visibly intoxicated when served. The expert also stated that the tavern(s)' liquor licenses may also have value enough to support some recovery. Conversely, the Estate presented evidence that neither the driver nor Braheem were visibly intoxicated, although both had BAC's over the legal limit. Because there is a conflict of evidence that must be evaluated by a determination of credibility, the matter is not ripe for summary judgment.

¶ 19 As this is a declaratory judgment action, the determination as to whether there was the possibility of a liability verdict and any assets available to support a recovery in a dram shop action is for the trial court to determine. These issues are part and parcel of a determination of the rights and responsibilities under the American States insurance policy. However, we believe that the amount of the verdict must be left to the arbitrators. **It is up to the arbitrators to determine the value of the possible dram shop action and to determine how that affects the liability of American States.**

■ ¶ 20 The Estate presented evidence that neither of the taverns in question had dram shop insurance or any other assets. If it is determined that there was a possibility of recovery under the dram shop theory, it is up to the arbitrators to evaluate the actual value of any possible recovery from the taverns so that prejudice to American States can be determined, considering the chance of recovery and the amount of recovery if successful. For example, if the taverns had no assets but one tavern did have a $50,000 insurance policy, the arbitrators would have to value the chance of recovery. If there was a 50% chance of establishing liability, the amount due from American States would be reduced due to the prejudice in defeating its subrogation rights by $25,000.

¶ 21 The arbitrators must also determine whether the total loss in the case would exceed the value of the dram shop action by $900,000. Given the prospective damages in this case, Braheem was a young man when he died and likely could have shown significant wage loss damages,[3] there is a possibility that the total

3. If Braheem had a 40 year work-life expectancy and stood to earn only $25,000 a year

damages suffered in this loss would exceed all available coverages, including the possible dram shop action.

¶ 22 Thus, even if there were prejudice to American States for the value of the lost subrogation rights to the dram shop action, the total value of Braheem's recovery could easily have left the full limits of the American States policy at risk. For example, if the arbitrators were to decide the total value of Braheem's damages is $3,000,000 and a best case recovery from the taverns would have been $250,000,[4] there would still be well over $900,000 in underinsured loss and American States would not be entitled to any set-off since it would have been liable for its full policy limits even taking the dram shop action into account.

¶ 23 Order reversed. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 24 JOHNSON, J., files a Concurring Opinion.

Concurring Opinion by JOHNSON, J.:

¶ 1 I concur with the result reached by the Majority. I agree with the Majority that American States must demonstrate prejudice in order to properly deny coverage under the notice provisions of the policy. Nevertheless, I write separately to clarify that this conclusion, in my judgment, represents a modest extension of our previous decisions in *Nationwide Mut. Ins. Co. v. Lehman*, 743 A.2d 933 (Pa.Super.2000) and *Cerankowski v. State Farm Mut. Auto. Ins. Co.*, 783 A.2d 343 (Pa.Super.2001). I am unable to join those portions of the Majority's Opinion that appear

to direct how American States can and cannot prove prejudice.

¶ 2 The only issue presented to this panel on appeal is:

I. Is an insurer that provides underinsured motorist coverage released from paying UIM benefits to the insured because the insured settled his claim with the primary and excess insurance carriers without notice and consent to the UIM carrier when the UIM carrier has not shown any prejudice as a result thereof?

Brief for Appellant at 4.

¶ 3 Because of the decision that this Court reached in *Nationwide Ins. Co. v. Schneider*, 906 A.2d 586 (Pa.Super.2006) (en banc), when reviewed and considered alongside *Lehman* and *Cerankowski*, it can be inferred that, subject to the express policy language contained in an insurance policy under review, an insurer cannot escape providing coverage without demonstrating actual prejudice. *See Schneider*, 906 A.2d at 593. Having concluded that the order of the trial court did not predict (and could not have predicted) the holding subsequently laid down in *Schneider*, I agree that the order from which this appeal has been taken must be vacated and the matter remanded for further proceedings in the trial court.

¶ 4 To the extent that my distinguished colleagues have gone beyond this narrow question, I must respectfully decline to join them. I find that these issues are not properly before this Court, because they were not raised in or decided by the trial court, and moreover, were not raised during this appeal. The Pennsylvania intermediate appellate courts have been cau-

---

for the entire 40 year period, total wage loss alone would still be $1,000,000.

4. We are not, in any way whatsoever, suggesting possible values for Braheem's damages. The numbers used were simply picked to illustrate legal ramifications.

tioned on numerous occasions to refrain from such review. *See,* e.g., *Danville Area Sch. Dist. v. Danville Area Educ. Assn.,* 562 Pa. 238, 754 A.2d 1255, 1259 (2000) *(relying on and restating Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975) (holding Superior Court exceeds its proper appellate function when *sua sponte* considering issues not presented to it)); *Sammons v. Civil Service Comm'n of City of Philadelphia,* 555 Pa. 1, 722 A.2d 1012, 1013 (1998) *(same); Estep v. Estep,* 508 Pa. 623, 500 A.2d 418, 419 (1985) *(same); Phillips Home Furnishings, Inc. v. Continental Bank,* 467 Pa. 43, 354 A.2d 542, 543–44 (1976) *(same).* Accordingly, I concur with the result reached by the Majority, but depart from its legal analysis and reasoning that goes well beyond the issue presented.

¶ 5 To support its conclusion that American States is obligated to demonstrate that it suffered prejudice, the Majority cites and relies on *Nationwide Ins. Co. v. Schneider, supra,* and *Cerankowski.* Majority Opinion at 751–52, 753. In *Cerankowski,* we held that "an insurer must demonstrate prejudice before it can invoke a 'consent to settle' clause to prevent its payment of underinsured motorist coverage to an insured who has paid for that insurance." 783 A.2d at 348. A "consent to settle clause" is a provision that is typically found in an insurance contract and allows the insurance company to deny coverage if the insured does not obtain the written consent of the insurer prior to settling any legal action or releasing any party from suit. *See Schneider,* 906 A.2d at 591.

¶ 6 In this case, American States is not seeking to enforce a "consent to settle" clause as its basis for denying coverage. Instead, American States is invoking the "notice" clauses of the policy, which dictate that UIM coverage will only apply when it has "been given prompt written notice" of any tentative settlement or potential suit between the insured and other parties. *See* Brief for Appellee at 13–18. Unlike the notice provision in *Schneider,* the policy at bar does not expressly contain a prejudice clause, and thus, *Schneider* is not controlling. *See Schneider,* 906 A.2d at 593 ("The notice provision of the policy ... explicitly includes a requirement that Nationwide must be precluded from subrogating against liable parties before Nationwide may deny coverage based upon lack of notice.") ... ("Accordingly, under the explicit language of the policy, Schneider's failure to give timely notice cannot be sustained as a genuine ground for the denial of his claim under the policy."). Nevertheless, in *Lehman, Cerankowski's* predecessor, this Court explained that the insurer's use of a "consent to settle" clause frustrates public policy by depriving the insured of benefits for which he/she had paid. 743 A.2d at 971. In my view, the public policy concerns and underlying rationale in *Lehman*—that "[w]here the insured settles with a tortfeasor without the insurer's consent and does not prejudice the insurer's interests, the purpose of the consent-to-settle clause is lacking"—applies no less to an insurer's refusal to honor its obligations based on a policy's notice provisions. Consequently, I find that *Lehman's* doctrine is applicable here and can reasonably be extended to encompass the notice provisions at issue; *i.e.* "where the insured settles with a tortfeasor or other carrier without first notifying the insurer, and this failure to provide notice does not prejudice the insurer's interest, then the purpose of the notice provision is lacking." Such a conclusion is buttressed by our Supreme Court's decision in *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977). In *Brakeman,* the Court held that insurance clauses requiring notice of the claims "as soon as

practicable" after the accident are not enforceable unless the insurer can prove prejudice. *See id.* at 196–97. The Court reasoned:

In short, the function of a notice requirement is to protect the insurance company's interest from being prejudiced. Where the insurance company's interest have [sic] not been harmed by late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.

*Id.* at 197.

¶ 7 Choosing to follow in the spirit, reasoning and trend of *Brakeman, Lehman* and *Cerankowski*, I agree with the Majority that in order to invoke the "notice" provisions of its policy and deny coverage, American States must, as a prerequisite, demonstrate that it suffered prejudice.

¶ 8 While I agree with the Majority that American States is required to make a showing of prejudice, I disagree with the portions of the Majority's Opinion that direct how American States can and cannot prove prejudice and conclude that certain aspects of the case must be submitted to arbitration. Here, the trial court granted summary judgment in favor of American States, because it Opinion (T.C.O.), 5/16/05, at 3 (unnumbered) (citing *Weichey v. Doerr*, 60 Pa. D. & C.4th 88, 93–94 (Butler Co.2001)) ("The issue of prejudice is only necessary in cases where the insurer received notice of the settlement claim and denied the UIM benefits."). Accordingly, the Estate's sole contention on appeal is that the trial court erred when it determined that *Lehman* and *Cerankowski* are inapplicable. Brief for Appellant at 10–12.

¶ 9 Given the procedural posture of this case, the issues of whether American States can establish prejudice, and whether certain aspects of the case must be submitted to arbitration are not properly before this Court, because they were not raised in or decided by the trial court and were not raised during this appeal. *See Fisher v. Brick*, 358 Pa. 260, 56 A.2d 213, 215 (1948) ("An appellate court does not sit to review questions that were neither raised, tried nor considered in the trial court."); *see also Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174, 179–80 (1978) (stating that "an appellate court is *not to raise sua sponte* issues which it perceives in the record where, as here, those issues are not presented at the appellate level."). The Majority, nonetheless, appears to sift through the record and determine the situations in which American States can and cannot demonstrate prejudice. *See* Majority Opinion at 752 "We disagree that the settlement with the tortfeasor and Braheem's own UIM carrier without notifying American States would prejudice American States. Assuming any applicable credit for the policy limits would be given, American States could suffer no prejudice by Braheem settling claims for the full value of the policies."; *Id.* at 752–53 n. 2 "In this matter, there is no question of prejudice because the full policy limits were tendered. As to subrogation against the tortfeasor, the driver died leaving no estate so there was nothing to subrogate against."; *Id.* at 753 "Because an insurer is not entitled to a set-off from the third party tortfeasor, it is especially important to protect the insurer's subrogation rights. Thus, if a claimant defeats a viable subrogation right, this will provide the prejudice needed for the insurer to deny coverage."; *Id.* at 753 "While it is true that there is no evidence of prejudice to support American States' position that it was prejudiced by the set-

tlements with the driver and Braheem's UIM carrier, there is sufficient evidence of prejudice regarding the potential dram shop action. Thus, Braheem is not entitled to summary judgment on that issue."; *Id.* at 754 "The Estate has presented sufficient evidence, in the form of affidavits, indicating the taverns in question did not have dram shop insurance, did not own the property, and that there was no viable dram shop action, to defeat American States' motion for summary judgment.". The Majority also concludes that "[i]t is up to the arbitrators to determine the value of the possible dram shop action and to determine how that affects the liability of American States." *Id.* at 754. Even if the Majority is correct in its legal analysis, I believe that as an appellate court, our job is complete once we find an error in the trial court's conclusion of law, *i.e.*, the trial court erred as a matter of law when it determined that American States was not required to demonstrate prejudice. Our Supreme Court has prohibited this Court from deciding extraneous issues *sua sponte*. *See, e.g., Danville Area Sch. Dist; Phillips Home Furnishings*; and *Wiegand v. Wiegand,* Therefore, I am unable to join these portions of the Majority's Opinion.

¶ 10 While I agree that disposition of this case requires remand in order for the trial court to determine whether American States can establish prejudice, I would take no position on the ground(s) upon which American States must proceed in order to prevail in the trial court. I would also take no position on whether or not the arbitrators need to determine the value of a dram shop action and the corresponding liability of American States.

¶ 11 For the foregoing reasons, I concur with the result reached by the Majority, but respectfully depart from its legal analysis and reasoning.