582 A.2d 17

**George KESTER and Pauline Grube Kester, Appellants,**

v.

**ERIE INSURANCE EXCHANGE, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 4, 1990.

Filed Nov. 5, 1990.

Thomas B. Rutter, Philadelphia, for appellants.

Frances A. Fruhwirth, Allentown, for appellee.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from an Order of the Court of Common Pleas of Lehigh County granting appellee's motion for judgment on the pleadings.

On September 27, 1986, Appellants sustained serious bodily injury when a vehicle, driven by one Frederick A. Richardson, crossed the center line and struck appellants' automobile head on. An action was brought against the estate

of Mr. Richardson, deceased,[1] and concluded by payment of $50,000, the limits of the policy carried by Richardson's insurer, in December of 1987. At this point appellants sought Underinsured Motorists' Coverage (UIM), from their own insurer, appellee herein, and were informed, approximately a year later, that under the terms of the policy, they would be required to exhaust all available sources of liability insurance prior to asserting a claim for UIM. Specifically appellee averred that appellants were under a duty to pursue the Pennsylvania Department of Transportation for failure to maintain the roadway where the accident occurred. Appellants then filed a Complaint for Declaratory Judgment alleging that the exhaustion language contained in the insurance contract was contrary to the relevant provision of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.*, and violative of public policy; appellants also denied any duty as against PennDOT. Appellee's Answer and New Matter contained the assertion that in fact suit had been filed against the transportation authority, a statement vigorously denied by appellants' Reply. Both parties filed petitions for judgment on the pleadings, and the trial court ruled in favor of appellee on the basis that the exhaustion provision was both unambiguous and enforceable, and that any claim such as appellants' was arbitrable and should be disposed of in that manner. This appeal followed.

■ Before addressing the substantive issues presented by appellant, we must turn to appellee's claim that because the order entered by the trial court referred this case to common law arbitration, it is not final and appealable. Appellee cites *Wilson v. Keystone Insurance Company,* 289 Pa.Super. 101, 432 A.2d 1071 (1981), in support of its contention that because the clause makes arbitrable "Disagreement over the legal right to recover damages or the amount of damages ..." without specific reference to the Uniform Arbitration Act of 1980, 42 Pa.C.S.A. § 7301 *et*

---

1. Mr. Richardson's demise was apparently unrelated to the accident with appellants.

*seq.*, common law arbitration is implicated. Appellee's reliance is misplaced. In *Wilson* no mention at all was made of the statute, whereas here, the section of the policy entitled "Arbitration," after outlining the procedures necessary to commence the arbitration process, concludes with the following:

> In all other respects, any arbitration will follow the statutory arbitration provisions of the Pennsylvania Uniform Arbitration Act (42 Pa.C.S.A. Sections 7301 through 7320).

We find this a sufficiently clear statement of intent to bring the statute into play and thus render the order final.

 Even were it not enough, however, this court in *Daley–Sand v. West American Insurance Company*, 387 Pa.Super. 630, 564 A.2d 965 (1989), held that:

> The law is clear that, although a case turning on the application or construction of an uninsured motorist clause is within the exclusive jurisdiction of the arbitration system, when the issue is whether a particular provision of the contract is contrary to a constitutional, legislative or administrative mandate, the courts properly exercise their jurisdiction over the entire matter.

*Id.*, 387 Pa.Superior Ct. at 637, 564 A.2d at 969. (citations omitted).

*Daley–Sand* concerned whether the terms of a consent to settle clause nullified the Motor Vehicle Responsibility Law requirement of underinsured motorist coverage. We find that its holding permits us to take cognizance of appellants' claim that the Law is violated by the exhaustion clause contained in their policy. *See also, Wilbert v. Harleysville Mutual Insurance Company*, 254 Pa.Super. 217, 385 A.2d 987 (1978).

The standard governing our assessment of the propriety of a judgment entered on the pleadings is that:

> we must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. *West Penn Administration, Inc. v. Pittsburgh*

*National Bank,* 289 Pa.Super. 460, 467, 433 A.2d 896, 900 (1981) (citations omitted); *Zelik v. Daily News Publishing Co.,* 288 Pa.Super. 277, 431 A.2d 1046 (1981); *see also Wojciechowski v. Murray,* 345 Pa.Super. 138, 497 A.2d 1342 (1985).... We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise. *Gallo v. J.C. Penney Casualty Insurance Co.,* 328 Pa.Super. 267, 476 A.2d 1322 (1984); *see also Bata v. Central–Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967); *Wojciechowski,* 345 Pa.Super. at 139, 497 A.2d at 1343.

*Jones v. Travelers Insurance Company,* 356 Pa.Super. 213, 217, 514 A.2d 576, 578 (1986).

■ Section 1731 of the Motor Vehicle Financial Responsibility Law reads as follows:

(a) General rule.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage)....

(c) Underinsured motorist coverage.—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.

The policy of insurance carried by appellee reads, in pertinent part, as follows:

When the accident involves underinsured motor vehicles, we will not have to pay until all other forms of insurance applicable at the time of the accident have been exhaust-

ed by payment of their limits. Other forms of insurance include, but are not limited to:

(1) motor vehicle liability insurance.

(2) any other liability insurance.

(3) self-insurance plans, which include bonds, securities or cash deposits.

Appellee's refusal to pay appellants' claim has been premised on the theoretical liability of PennDOT for failure to maintain the roadbed. In its brief, however, appellee is careful to avoid such an overt delegation of responsibility, although it does reiterate the statement, categorically denied by appellants, that suit was brought against the state agency. Even were liability assignable to PennDOT under some set of facts, the central focus of both the legislative enactment and the policy itself clarifies appellee's obligation: underinsured motorist coverage is recompense for injuries caused by owners and operators of motor vehicles only. There is no mention that appellee's responsibility to an insured is relieved by, e.g., recovery from a related product liability claim. Such contingencies can be dealt with under appellee's right of subrogation. Again, the phrase "underinsured motorist" refers to a tortfeasor who has caused the injury while in the process of maintaining or operating an automobile, and does not implicate those who maintain and operate the roads driven upon.

That this is so clearly appears from the terms of the applicable section of appellants' insurance policy.

### OUR PROMISE—UNDERINSURED MOTORISTS COVERAGE

We will pay damages that the law entitles you or your legal representative to recover *from the driver or owner of an underinsured motor vehicle. Damages must result from an accident arising out of the maintenance or use of the underinsured motor vehicle.* (emphasis supplied).

As all the parties to this action freely acknowledge,

The language of the statute itself suggests that uninsured motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. *See* 75 Pa.C.S. § 1731(c). An underinsured motor vehicle, must by definition, be an insured vehicle. Thus the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a *second policy*, under which the injured claimant is either an insured or a covered person. It is the *second policy* which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Wolgemuth v. Harleysville Mutual Insurance Company*, 370 Pa.Super. 51, 58, 535 A.2d 1145, 1149 (1988).

Our supreme court, in defining the broad scope and remedial purpose of the statute noted that it was intended,

"to afford financial recompense to persons who receive injuries ... solely through the negligence of motorists, who, because they are uninsured and not financially responsible cannot be made to satisfy a judgment." *Johnson v. Concord Mutual Insurance Company*, 450 Pa. 614, 619, 300 A.2d 61, 64 (1973) (citation omitted); *Patrick v. Cherokee Insurance Co.*, [354] Pa.Super. [427], 512 A.2d 24, 26 (1986).

*Jones, supra*, 356 Pa.Super. at 219, 514 A.2d at 579.

There is no authority in Pennsylvania for the proposition that exhaustion clauses per se are contrary to the intent of the legislature or violative of constitutional or administrative mandates. This question is, in any event, not before us.[2] We are limited to a determination of whether the

2. The superior court of New Jersey, in dealing with whether certain aspects, including exhaustion clauses, of underinsured motorist clauses noted:

[W]hile a seriously injured innocent victim whose tortfeasor is uninsured has an immediate right to resort to the contractual coverage he purchased from his liability carrier, the seriously in-

particular exhaustion clause contained in appellant's policy is contrary to public policy as expressed in the underinsured motorist statute. We find that it is.

The clause contained in appellants' policy expands the field of those liable to include anyone from whom recovery for appellants' injuries might be imagined possible. Given the breadth of the exhaustion clause, these imaginings apparently need have no factual underpinning, nor any real relation to the purpose of underinsured motorist coverage. However, as the statute, its commentators, and the policy language make clear, only owners or operators of motor vehicles are included within the circle of those liable under the underinsurance procedure. The all-inclusive language of the clause is too broad, and too far beyond the intention of the statutes' framers.

Order reversed.

jured victim who has the misfortune to become involved with a minimally insured tortfeasor may have to wait years before being able to resort to his contractual coverage.
*Longworth v. Van Houten,* 223 N.J.Super. 174, 192, 538 A.2d 414, 424 (1988).