84 A.3d 626

**AAA MID–ATLANTIC INSURANCE COMPANY, Appellant**

v.

**Mary Suzanne RYAN and Edward J. Ryan, Husband and Wife, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 10, 2013.

Decided Jan. 21, 2014.

94

James C. Haggerty, Esq., Haggerty, Goldberg, Schleifer & Kupersmith, P.C., Philadelphia, for Pennsylvania Association for Justice.

Andrew Lee Riemenschneider, Esq., Moore & Riemenschneider, L.L.C., Abington, for AAA Mid–Atlantic Insurance Co.

Gregory Buchwald Heller, Esq., Young Ricchiuti Caldwell & Heller, L.L.C., Philadelphia, for Ryan, Mary Suzanne & Edward J.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice TODD.

In this discretionary appeal, we consider whether, under an insurance policy for underinsured motorist ("UIM") coverage, the amount of an insured's recovery may be offset by the amount of all damages paid in satisfaction of the underlying judgment, or by only the amount of compensation paid under the auto insurance policy of the underinsured driver/tortfeasor. For the reasons set forth below, we hold that the amount of damages which may be offset against recovery under a UIM policy includes damages recovered from all tortfeasors. Accordingly, we reverse the order of the Superior Court.

In September 2003, Mary Ryan was driving through an intersection in Philadelphia when another vehicle, driven by Charlotte Eckel, struck Ryan's vehicle, resulting in bodily injury to Ryan. Thereafter, Ryan and her husband, residents of Montgomery County, filed in the Montgomery County Court of Common Pleas two separate lawsuits, the first against Eckel and the other against the City of Philadelphia ("City") and the Pennsylvania Department of Transportation ("PennDOT"), wherein the Ryans alleged the highway was defectively designed. The claim against PennDOT was dismissed by stipulation, and the remaining parties agreed to transfer the actions against the City and Eckel to binding arbitration.

Prior to arbitration, Eckel settled with the Ryans by tendering the $25,000 limit of her motor vehicle liability insurance policy. With the City as the sole remaining defendant, the parties proceeded to arbitration. On May 6, 2008, following a hearing, the arbitrator apportioned liability as follows: Eckel, 50%; Mary Ryan, 35%; and the City, 15%. The arbitrator awarded the Ryans damages in the amount of $500,000, less $175,000 based on Ryan's comparative negligence of 35%, for a net award of $325,000. Pursuant to the doctrine of joint and several liability,[1] the City paid the Ryans $300,000, and, as noted above, the remaining $25,000 was paid by Eckel's insurance company.

While their actions against Eckel and the City were pending, the Ryans filed a claim under their motor vehicle insurance policy (the "Policy") with AAA Mid–Atlantic Insurance Company ("AAA"), which included optional coverage for compensatory damages resulting from bodily injuries caused by the owner or operator of an underinsured motor vehicle.[2] The

---

1. Under the doctrine of joint and several liability, where there is more than one defendant, an injured party may seek to recover his or her entire judgment from either of the defendants. Effective June 28, 2011, the practice of joint and several liability was abolished as a general matter. *See* 42 Pa.C.S.A. § 7102(a.1)(2).

2. An "underinsured motor vehicle" is defined as a "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa.C.S.A. § 1702.

Policy contained a "Limit of Liability" clause, which provided, in relevant part:

B. The limit of liability shall be reduced [ ] by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an "insured's" attorney either directly or as part of the amount paid to the "insured." It also includes all sums paid for the same damages under Part A of the policy.

\* \* \*

D. No one will be entitled to receive duplicate payments for the same elements of loss.

Policy (Exhibit A to AAA's Petition to Vacate Award of Arbitrators) at 2 ¶¶ B, D (R.R. at 12a). AAA refused to make payment, and the matter proceeded to arbitration.

Following a hearing in January 2010, a three-member arbitration panel concluded that the May 6, 2008 award against the City was a final adjudication regarding the amount of damages and the apportionment of liability and contributory negligence, but that the Ryans could proceed with their claim to recover from AAA the amount of damages already recovered from the City.

At a second arbitration hearing in April 2010, the panel considered whether Section 1722 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL")[3], titled "Preclusion of recovering required benefits,"[4] and the statuto-

3. 75 Pa.C.S.A. §§ 1701–1799.7.

4. Section 1722 provides:

In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa.C.S.A. § 1722.

ry definition of UIM coverage,[5] controlled over the specific language in the Policy providing for a reduction and limitation of liability. Contrary to AAA's position, by a 2–1 decision, the panel concluded AAA was responsible "up to its policy limits for all amounts for which the third party tortfeasors were underinsured, disregarding any payments made by the City ... to the insured." Final Award and Opinion, 7/19/10, at 2. In so holding, the panel relied on the Superior Court's decision in *Allwein v. Donegal Mut. Ins. Co.*, 448 Pa.Super. 364, 671 A.2d 744 (1996), wherein the court determined that, because the MVFRL requires excess underinsurance coverage, not gap underinsurance coverage, the insurer could not offset the amount its insured received from the tortfeasor's insurer against the amount the insurer was required to pay pursuant to its policy. The arbitration panel further determined that, "since *Allwein* is controlling, ... [the Limit of Liability clause is] void as against public policy and not enforceable." Final Award and Opinion, 7/19/10, at 2. The panel recognized that its decision would allow a double recovery, but concluded that *Allwein* mandated such a result.

AAA filed a petition to vacate the July 19 award in the court of common pleas. The trial court granted the petition and reversed the arbitration panel's decision, concluding the panel failed to offer any legal support for its determination that the Limit of Liability clause of the Policy was void and unenforceable as against public policy. The trial court further found that, in focusing on whether Section 1722 of the MVFRL controlled over the specific terms of the Policy, the arbitration panel assumed a conflict between the two provisions where none actually existed. With respect to the arbitration panel's reliance on Section 1722 of the MVFRL, the trial court acknowledged that this Court, in *Tannenbaum v. Nationwide Ins. Co.*, 605 Pa. 590, 992 A.2d 859 (2010), interpreted Section 1722 as "an exhaustive list of benefits an insured may not

5. "Underinsured motorist coverage" is defined as coverage which "shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S.A. § 1731(c).

recover by way of an underinsured motor vehicle proceeding," and observed that UIM benefits are not included in that list. Trial Court Opinion, 12/8/10, at 8. However, the trial court concluded that Section 1722 pertains only to a plaintiff's *procedural* right to pursue an action for UIM benefits against an insurer, not to a plaintiff's substantive right to payment of benefits, and suggested the arbitration panel instead should have focused on Section 1731(a), which creates a right to purchase UIM coverage, and Section 1731(c), which creates a qualified right to payment of benefits.

Noting that, once an insured has been fully compensated for her damages, she is not "legally entitled" to recover more, the trial court concluded AAA acted in a manner consistent with the Ryans' qualified statutory right to the payment of benefits under Section 1731(c) by applying the offset and duplicate payment provisions after Mary Ryan had been fully compensated for her damages. *Id.* at 9. The trial court further distinguished *Allwein* on the basis that the court therein did not mention Section 1722, and that there was no final determination from which to assess whether the plaintiff's damages exceeded both the tortfeasor's insurance coverage and the UIM coverage.

The Ryans appealed, and the Superior Court reversed the trial court's order, vacated the judgment in favor of AAA, and remanded for further proceedings. In so doing, the Superior Court recognized this Court's "reticence to throw aside clear contractual language based on 'the often formless face of public policy,'" but concluded it is "obliged to find contractual language to be contrary to public policy when it violates statutory language." *AAA Mid–Atlantic Ins. Co. v. Ryan*, 3273 EDA 2010 at 12, 37 A.3d 1228 (Pa.Super. filed Oct. 12, 2011) (citations omitted). Noting that the "MVFRL establishes the prevailing public policy of the General Assembly in the area of underinsured motorist coverage," the court examined the language of the MVFRL and opined that the UIM provisions of the MVFRL embody "two prevalent, and somewhat competing, public policy interests"—providing coverage to those injured by a tortfeasor who lacks adequate coverage,

and cost containment. *Id.* at 13, 15. Next, the Superior Court compared the language of the MVFRL with the language of the Policy and concluded the Policy's Limit of Liability clause conflicted with the public policy embodied in the MVFRL, in that "[b]oth paragraphs B and D employ overly broad language, which frustrates the MVFRL's interest in protecting 'those injured by a [negligent driver] who lacks adequate coverage[.]' " *Id.* at 17 (citation omitted). The court further stated:

> [P]aragraph B is inconsistent with section 1722.... [S]ection 1722 sets forth an exhaustive list of the sources of recovery for which insurers may be credited. *See [Tannenbaum,* 992 A.2d at 866]. Section 1722 delineates a limited and well-defined list of appropriate recovery sources; the section does not grant insurers a reduction for **all** sums paid. Specifically, section 1722 does not identify an award originating from a third-party design defect claim as an appropriate source of recovery for which an insurer should receive credit. Conversely, paragraph B uses language that purportedly allows the insurer a reduction for any sum paid, **regardless of the source.** Similarly, in explicitly barring duplicate recovery, paragraph D overreaches in the same manner as paragraph B. Paragraph D essentially grants the insurer credit for any amount paid, irrespective of whether the source of the payment appears on the list under section 1722. Consequently, neither paragraph B nor paragraph D comport with the well-established public policy underlying section 1722 of the MVFRL, as well as sections 1702 and 1731(c).

*Id.* at 19–20 (footnote omitted, emphasis original).

Thus, the Superior Court concluded that Paragraphs B and D of the Limit of Liability clause of the Policy were void against public policy, in that "[a]pplying either paragraph B or D against Appellants' [UIM] claim would award [AAA] with a windfall benefit by allowing the insurer to avoid paying coverage based on contractual language in conflict with the MVFRL." *Id.* at 21. The court recognized that its holding

would allow the Ryans to "partake in a double recovery," but "view[ed] this result as the lesser of two evils." *Id.* at 20.

The Honorable Eugene Strassburger dissented, suggesting the majority's holding defied common sense and contravened years of Pennsylvania jurisprudence prohibiting duplicate recovery for the same injuries. To the extent the majority determined the MVFRL's goal of cost containment must yield to the goal of protecting those injured by negligent drivers with inadequate coverage, Judge Strassburger charged the majority with creating a "false conflict," in that the plaintiff herein is not legally entitled to recover additional damages since she has been compensated in full for her injuries. *AAA,* 3273 EDA 2010 at 3 (Strassburger, J., dissenting).

AAA filed a petition for allowance of appeal, and we granted review to consider whether a UIM recovery may be offset against all damages paid in satisfaction of a judgment, or only for those sums paid under the automobile policy of the other driver. As this is a question of law, our standard of review is *de novo* and our scope of review is plenary. *Dechert LLP v. Commonwealth,* 606 Pa. 334, 998 A.2d 575, 579 (2010).

AAA begins its argument by emphasizing that the purpose of UIM coverage is to provide coverage to those injured by a tortfeasor who lacks adequate coverage. Thus, AAA contends the first step in determining whether someone is entitled to UIM benefits is to determine whether the injured party is entitled to recover damages from the underinsured party. AAA argues that the Ryans are not entitled to UIM benefits in this case for several reasons. First, AAA argues that the arbitration panel previously determined the amount of damages to which the Ryans were entitled, that the Ryans were fully paid for that award, and, therefore, that any additional award of damages under the UIM policy would allow for a *de facto* relitigation of the issue of damages in violation of the principles of *res judicata* and collateral estoppel.

AAA further argues that any right the Ryans had to recover damages against the underlying tortfeasor was extinguished by the application of the doctrine of joint and several

liability, which, as explained *supra* note 1, allows an injured party to recover an entire judgment from any one responsible tortfeasor. According to AAA, once the Ryans received full payment from the City and Eckel, under the Limit of Liability clause, they were not legally entitled to recover additional damages from AAA.

Finally, AAA maintains that the Superior Court's decision improperly allows for a double recovery for the same injuries, contrary to long-established jurisprudence, as well as the MVFRL's goal of cost containment. AAA contends the Superior Court read Section 1722 in a vacuum, ignoring Section 1731(c), which provides for UIM coverage when (1) there is injury while using a motor vehicle, and (2) the injured person is "legally entitled to recover damages therefor." AAA argues that, because the Ryans were fully compensated, they were not *legally entitled* to additional damages, and, thus, there was no triggering event to entitle them to UIM coverage under Section 1722.

The Ryans argue, conversely, that UIM coverage is a creature of statute and that the statutory definition of UIM coverage set forth in Section 1731 covers their claims against Eckel, who had inadequate liability insurance. The Ryans further contend that Section 1722, which addresses the impact of other sources of recovery, is exhaustive, and, because recovery from the City on a highway design claim is not specifically listed under Section 1722, such recovery does not preclude their recovery of additional damages in an UIM proceeding. As support for this proposition, the Ryans rely on this Court's decision in *Tannenbaum*, as well as the Superior Court's recent *en banc* decision in *Smith v. Rohrbaugh*, 54 A.3d 892 (Pa.Super.2012), and its prior decision in *Allwein*.

With regard to AAA's argument that the instant case is governed by the Limit of Liability clause of the Policy, the Ryans concede that, *if enforceable*, the clause would allow AAA a credit for the damages the Ryans received from the City on their highway design claim. However, citing, *inter alia, Generette v. Donegal Mut. Ins. Co.*, 598 Pa. 505, 957 A.2d

1180 (2008), the Ryans contend the language is not enforceable because Section 1722 does not allow offset for that source of recovery, and contract provisions which conflict with statutory provisions are not enforceable.

The Ryans further argue that AAA's cost-containment argument is unpersuasive because it ignores the potential availability of subrogation,[6] as well as the fact that AAA "could have conducted this matter in a way that both created a subrogation right and preserved its right to enforce it." Appellees' Brief at 17. The Ryans also question whether AAA's approach would truly contain costs, noting that cost containment principles exist to protect insurers against forced underwriting of unknown risks, and, in the instant case, AAA was not faced with an "unknown risk." *Id.* at 19.

Finally, the Ryans challenge AAA's reliance on the Limit of Liability clause and the general prohibition against double recovery on the grounds that such concerns cannot displace the clear statutory language. Along these lines, the Ryans accuse AAA of failing to provide in the argument portion of its brief the full definition of UIM, including the language which ties the statute to damages that are recoverable from owners or operators of other vehicles.

With these arguments in mind, we turn to our analysis of the question before us. In construing a policy of insurance, a court must give plain meaning to the clear and unambiguous language of a contract provision, unless the provision violates a clearly expressed public policy. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998).[7] Public policy is to be ascertained by reference to the laws and legal

6. Subrogation is an "equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss." *Jones v. Nationwide Prop. and Cas. Ins. Co.*, 613 Pa. 219, 32 A.3d 1261, 1270 (2011). It allows the subrogee (the insurer) to step into the shoes of the subrogor (the insured) to recover from the party that is primarily liable (the third party tortfeasor) any amounts previously paid by the subrogee to the subrogor.

7. The Ryans do not assert the language of the Limit of Liability clause of the Policy is ambiguous or vague; they contend only that the clause is unenforceable because it is against public policy.

precedents and not from general considerations of supposed public interest. *Id.* Indeed, "[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]." *Id.*

■ With regard to the public policy underlying UIM coverage, we have explained that "underinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries." *Id.* at 1010; *see also Heller v. Pennsylvania League of Cities and Municipalities*, 613 Pa. 143, 32 A.3d 1213, 1221 (2011) ("it is undisputed that the purpose of underinsured motorist provisions is to provide coverage to those injured by a tortfeasor lacking adequate coverage"). Thus, the Superior Court was correct that the "clearly expressed" public policy underlying the MVFRL is protecting "those injured by a [negligent driver] who lacks adequate coverage[.]" *AAA*, 3273 EDA 2010 at 17.

■ However, we find no basis for that court's conclusion that the provisions of the Policy conflict with the public policy embodied in the MVFRL by "frustrat[ing] the MVFRL's interest" in protecting those injured by a tortfeasor who lacks adequate coverage. *Id.* The Ryans were fully compensated for their injuries and received the entire amount of damages to which the arbitration panel held they were entitled from the City and Eckel. Thus, it cannot be said that Paragraphs B and D of the Limit of Liability clause of the Policy in any way "frustrated" the MVFRL's public policy of protecting the Ryans from inadequate compensation. As there was no basis to conclude that the Limit of Liability clause of the Policy conflicted with the clearly expressed public policy of the MVFRL, the Superior Court erred in declaring that language of the Policy to be void. *See Eichelman, supra.*[8]

8. To the extent the Superior Court, in reversing the trial court's order in favor of AAA, also relied on this Court's decision in *Tannenbaum,*

Moreover, as recognized by Judge Strassburger in his thoughtful dissent below, there exists a long-standing prohibition in this Commonwealth against double recoveries for a single injury. *See D'Adamo v. Erie Ins. Exch.*, 4 A.3d 1090, 1096 (Pa.Super.2010) (" 'While it is a fundamental rule of damages that a person injured by the tortious act of another is entitled to compensation, a court will not allow that person more than one satisfaction in damages. An injured party cannot recover twice for the same injury.' "); *see also Brown v. City of Pittsburgh*, 409 Pa. 357, 186 A.2d 399, 402 (1962) ("It has long been the law that for the same injury, an injured party may have but one satisfaction."); *Thompson v. Fox*, 326 Pa. 209, 192 A. 107, 109 (1937) (plaintiff who was compensated for all injuries could not obtain from defendant a second satisfaction for the same damage).

In *Jones, supra,* this Court recognized this policy in our discussion of the concepts of subrogation and the "made whole" doctrine in the context of insurance deductibles. With regard to subrogation, we approved the following language by the Superior Court:

[W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party,

*supra*, we find such reliance to be misplaced. Citing *Tannenbaum*, the Superior Court concluded "section 1722 sets forth an exhaustive list of the sources of recovery for which insurers may be credited," and, as section 1722 "does not identify an award originating from a third-party design defect claim as an appropriate source of recovery for which an insurer should receive credit," AAA was not entitled to an offset for the amount the Ryans received from the City. *AAA*, 3273 EDA 2010 at 19.

In *Tannenbaum*, the insurance company sought an offset for disability payments made to the insured through group and personal disability plans for which the insured paid and/or earned through his employment. This Court held that, "under Section 1722's plain terms, an insured's recovery under UM/UIM policies may be offset by group/program/arrangement benefits, including disability benefits purchased, in whole or in part, by the insured, at least so long as those benefits are not subject to subrogation." 992 A.2d at 869. However, contrary to the Superior Court's characterization, nowhere in *Tannenbaum* did this Court state that the list of sources of recovery for which insurers may be credited under in Section 1722 is exhaustive. Moreover, in *Tannenbaum*, the insured was not seeking to recover the same damages from both his automobile insurance carrier and the tortfeasor who caused his injuries.

equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while *preventing the injured party from profiting a "double recovery"* at the indemnifying party's expense.

*Jones,* 32 A.3d at 1270 (quoting *Allstate Ins. Co. v. Clarke,* 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987)) (emphasis added). We further observed that the made whole doctrine:

both ensures that the insured is fully compensated for his or her injury before the insurer recovers, in cases where there are insufficient funds to satisfy both the insured and the insurer, and *prevents the insured from receiving dual recovery for the same loss from both the tortfeasor and the insurer.*

*Jones,* 32 A.3d at 1271 (emphasis added).

Nevertheless, the Superior Court below suggests that the MVFRL "alters the common law [prohibiting duplicate recovery for the same injury] to effectuate the legislature's view that victims injured as a result of motor vehicle accidents are to be treated differently than other victims of tortious conduct." *AAA,* 3273 EDA 2010 at 20–21 n. 12. The court, however, cites no language evidencing an intent by the legislature to supersede or abrogate the principles of the common law in this regard, as would be the legislature's prerogative. Moreover, as noted above, "underinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries." *Eichelman,* 711 A.2d at 1010. As the Ryans were fully compensated for Mary Ryan's injuries, the purpose of the MVFRL is not furthered by allowing the Ryans to recover additional damages from AAA.

In summary, as there was no basis for the Superior Court to conclude that the Limit of Liability clause of the Policy violated the MVFRL's policy of protecting injured victims from underinsured motorists, and, furthermore, because the Superior Court's determination is contrary to Pennsylvania law which precludes double recovery for the same injury, we

reverse the order of the Superior Court and remand to the Superior Court for reinstatement of the trial court's order.

Order reversed.  Case remanded.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER, McCAFFERY, and STEVENS join the opinion.